## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WEAVER'S COVE ENERGY, LLC, Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 07-cv-1525(RBW) |
| U.S. DEPT. OF INTERIOR, *et al.* Defendants. | ) ) ) ) | |

### PLAINTIFF WEAVER'S COVE ENERGY, LLC'S NOTICE OF SUPPLEMENTAL SUPPORT IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Weaver's Cove Energy, LLC ("Weaver's Cove") respectfully submits this Notice of Supplemental Support in Opposition to Defendants Motion to Dismiss.

This lawsuit challenges two determinations by the Department of the Interior ("DOI"): (1) a July 5, 2005 decision by DOI and its National Park Service ("NPS"); and (2) a February 7, 2006, decision by DOI's Fish and Wildlife Service ("FWS"). *See* Compl. ¶¶ 4-6. The Complaint charges that DOI lacked authority under the Wild & Scenic Rivers Act ("WSRA"), 16 U.S.C. § 1271 *et seq.*, to render those decisions, and that those decisions were contrary to law, against substantial evidence, and arbitrary and capricious. *See id.* ¶¶ 45-51, 54-62.

Defendants filed a motion to dismiss on January 31, 2008 (Dkt. No. 17). On February 15, 2008, Defendants provided to Weaver's Cove what purports to be the administrative record in this case. Immediately after filing its opposition to Defendants' Motion to Dismiss, Weaver's Cove began reviewing the documents in the purported record. On March 12, 2008, while comparing documents obtained through a separate Freedom of Information Act ("FOIA") request, Weaver's Cove identified at least three documents directly relevant to Defendants'

motion, *i.e.*, the documents contain statements by representatives of Defendants that directly refute the position Defendants have taken in this lawsuit.[1]

The first document (Ex. A) is an email chain among Rick Bennett and Michael G. Thabault of the FWS, and Marshall P. Jones, the Deputy Director of the FWS. While the correspondence is interesting for many reasons, the critical statement occurs on page 4, where Thabault discusses with Deputy Director Jones the impact on Weaver's Cove of both the July 2005 decision and the February 2006 decision, proclaiming that the U.S. Army Corps of Engineers "is unable to permit a project if the NPS declares affects [sic] under the WSRA. *Our (DOI) position was effectively a project stopper*" (emphasis added).

The second document (Ex. B) is an email from Jamie Fossburgh, the Rivers Program Manager for the Northeast Region of the NPS to Ben Letcher of the U.S. Geological Survey. In the email, Mr. Fossburgh invites Mr. Letcher to provide "expert" assistance to the NPS regarding the Weaver's Cove project, claiming that "*we have a veto over federal approval* [of the project] if we feel that the values for which the river might be designated by Congress as W&S could be adversely affected" (emphasis added).

The third document (Ex. C) is what appears to be a monthly briefing statement authored by Mr. Fossburgh regarding the Weaver's Cove project.[2] In it, the NPS states that "FERC's FEIS correctly cites that federal Army Corps of Engineers dredge and fill permits necessary for

---

[1] The purported record contains 436 documents consisting of nearly 4000 pages. In addition, Plaintiff has recently received a voluminous response from both the NPS and the U.S. Coast Guard to separate FOIA requests relating to issues separate from this litigation. While the three documents attached to this motion were discovered just this week, Plaintiffs have not had the opportunity to review and analyze every single document that was provided in the purported record or in response to its FOIA requests. Plaintiffs believe, based on the course and sequence of communications with Defendants since the inception of the Weaver's Cove project, that other documents containing similar statements by Defendants may be discovered. Rather than wait until the thousands of documents are reviewed and analyzed, however, Plaintiff elected to file this Notice of Supplemental Support now to provide Defendants with an opportunity to respond in their reply memorandum.

[2] Plaintiff has attached the briefing statement dated 7/18/05, which is not listed in the record index received by Weaver's Cove, but many similar versions of this statement with subsequent dates are littered throughout the record.

the project . . . cannot be issued without concurrence from NPS that the project will not adversely affect potential designation of the Taunton as a Wild and Scenic River."

Those three statements should be considered by the Court in deciding on Defendants' Motion to Dismiss. Defendants have attempted to avoid judicial review of its decisions by consistently claiming, throughout this litigation, that the decisions reflected in the July 2005 and February 2006 leters were not final agency determinations, that Weaver's Cove lacks standing to challenge them, and that Weaver's Cove's challenge is unripe.

Defendant cannot have it both ways. Despite Defendants' recent arguments to this Court to the contrary, the attached documents reflect an understanding by Defendants that their July 2005 and February 2006 decisions were not "merely tentative or interlocutory." *See* Pl.'s Mem. in Opp'n at 35-36. Indeed, the documents reveal that Defendants intended to "alter the legal regime to which [the Army Corps and FERC] were subject," Pl.'s Mem. in Opp'n at 19-21, and that they intended to determine "rights and obligations . . . from which legal consequences [to Weaver's Cove] will flow." *Id.* at 36, 39-40. Stated another way, Defendants knew exactly what they were doing in issuing the July 2005 and February 2006 decisions – blocking the project.

When the three attached statements are considered in connection with the two decisions at issue in this case, and in the context of the litigation positions that Defendants have taken in other cases, it is evident that Defendants reached a final, conclusive determination that they have a "veto" over the project, and that their exercise of that veto in both the July 2005 and the February 2006 letters was a "project stopper."

Accordingly, Weaver's Cove respectfully requests that the Court consider this Notice and the attached documents in ruling on the motion to dismiss, and that the Court deny the motion to dismiss, so that Defendants' actions can be challenged on the merits.

Respectfully submitted,

/s/    Bruce F. Kiely
Bruce F. Kiely (Bar No. 223024)
Jeffrey M. Bauer (Bar No. 494284)
Adam White (Bar. No. 502007)
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
jeffrey.bauer@bakerbotts.com
Tel: (202) 639-7721
Fax: (202) 585-4076

*Attorneys for Plaintiff Weaver's Cove Energy, LLC*

March 14, 2008

CERTIFICATE OF SERVICE

I certify that on March 14, 2008, I caused a true and correct copy of the foregoing to be served on counsel for all parties by the Court's Electronic Case Filing (ECF) system.

March 14, 2008                                          /s/ Jeffrey M. Bauer
                                                        Jeffrey M. Bauer

# EXHIBIT

# A

~ 002352



Michael_Bartlett@fws.
gov
11/29/2006 03:59 PM

To: Jamie_Fosburgh@nps.gov, Bob_McIntosh@nps.gov
cc:
Subject: Fw: Weavers Cove


Jamie/Bob

Note the focus on the "effects threshold" issue in the email chain below.
Any questions on who the "speakers" are, give me a call.

Mike


*******************************************
Michael J. Bartlett
Supervisor
New England Field Office
70 Commercial Street
Concord, NH 03301
phone:  (603) 223-2541x26
fax: (603) 223-0104
email:  michael_bartlett@fws.gov
*******************************************
----- Forwarded by Michael Bartlett/R5/FWS/DOI on 11/29/2006 03:53 PM -----


            Michael
            Thabault/R5/FWS/D
            OI                                                    To
                                   Michael Bartlett/R5/FWS/DOI@FWS
            11/22/2006 01:49                                      cc
            PM
                                                            Subject
                                   Fw: Weavers Cove




Per our conversation.  Thanks.

Michael G. Thabault
U.S. Fish and Wildlife Service
413-253-8304
michael_thabault@fws.gov
----- Forwarded by Michael Thabault/R5/FWS/DOI on 11/22/2006 01:48 PM -----


            Marshall
            Jones/ARL/R9/FWS/
            DOI                                                   To
                                   Michael Thabault/R5/FWS/DOI@FWS
            11/21/2006 06:56                                      cc
            PM                     Marvin Moriarty/R5/FWS/DOI@FWS,
                                   Rick O Bennett/R5/FWS/DOI@FWS
                                                            Subject
                                   Re: Fw: Weavers Cove(Document link:
                                   Michael Thabault)

-- 002353

Mike this is much better than anything I have right now so thank you.  I'll
be sharing w/ David V and others in another meeting in next few days.

Marshall P Jones, Deputy Director
U.S. Fish and Wildlife Service
1849 C Street, NW
Washington, DC  20240
Tel: 202-208-4545    Fax: 202-208-6965


|  |  |  |
|---|---|---|
| Michael Thabault/R5/FWS/DOI | To | Rick O Bennett/R5/FWS/DOI@FWS |
| 11/21/2006 04:18 PM | cc | Marshall Jones/ARL/R9/FWS/DOI@FWS, Marvin Moriarty/R5/FWS/DOI@FWS |
|  | Subject | Re: Fw: Weavers Cove(Document link: Marshall Jones) |


Map.  Sorry I don't have a better quality.  The attached map shows the
study area for WS status.  Look at the lower river area you will see
Somerset and Fall River.  The upper reach of the project site is right off
the word Somerset.  You can see in the iset context where it is in Mass.
That piece of ground shooting off to the right of the inset is Cape Cod.

(See attached file: taunton_basemap_8_11.pdf)

Michael G. Thabault
U.S. Fish and Wildlife Service
413-253-8304
michael_thabault@fws.gov


|  |  |  |
|---|---|---|
| Rick O Bennett/R5/FWS/DOI | To | Marshall Jones/ARL/R9/FWS/DOI@FWS |
| 11/21/2006 03:32 PM | cc | Marvin Moriarty/R5/FWS/DOI@FWS, Michael Thabault/R5/FWS/DOI@FWS |

-- 002354

Subject
Fw: Weavers Cove
Q

Marshall,

Below are responses to your questions.  We are tracking down a map  and the
two letters, July 05 and February 06, referenced below and will fax to you
separately.

Rick
----- Forwarded by Rick O Bennett/R5/FWS/DOI on 11/21/2006 03:28 PM -----

> Michael
> Thabault/R5/FWS/D
> OI                                                                 To
>                              Rick O Bennett/R5/FWS/DOI@FWS
> 11/21/2006 03:22                                                   cc
> PM
>                                                               Subject
>                              Fw: Weavers Cove


Rick see responses below in red

Michael G. Thabault
U.S. Fish and Wildlife Service
413-253-8304
michael_thabault@fws.gov
----- Forwarded by Michael Thabault/R5/FWS/DOI on 11/21/2006 03:05 PM -----

> Marshall
> Jones/ARL/R9/FWS/
> DOI                                                                To
>                              Rick O Bennett/R5/FWS/DOI@FWS
> 11/21/2006 02:52                                                   cc
> PM                           Marvin Moriarty/R5/FWS/DOI@FWS,
>                              Michael Thabault/R5/FWS/DOI@FWS
>                                                               Subject
>                              Re: Fw: Weavers Cove(Document link:
>                              Michael Thabault)

-- 002355

Thanks Rick.  We had our meeting and basically it was to make sure that everyone is comfortable with our proposed response to the Kennedy/Reed/Kerry letter.  David V continues to say that he is not pressing us or NPS for any particular outcome -- let the chips fall where they may as long as we continue to work in good faith.  I pointed out that the immediate issue right now is for NPS -- what's the standard under the W&S River Act.  Two questions then came up:
2) Is this project actually within the W&S River designation?  Short answer is no. None of us knew for sure, but that  seems very unlikely -- and if it is outside the formal designation, how does that trigger the W&S Act?  The upper limits of the proposed project are 15 miles downstream of the proposed designation.  The proposed designation is based on the habitat values and the resources that use that habitat.  In this case anadromous fish use the habitat.  The fish migrate through the project area to get to the habitat.  Any (debate of the day) adverse effects to the fish could "diminish the values for which the designation occurred".  This is language from the WSRA and/or its implementing regs.  That's up to NPS to answer to David V -- but I'd appreciate your quick explanation of how the project site in the Fall River relates to the Taunton River.  The project area follows Mt. Hope Bay which is off of Narragansett Bay up stream to the mouth of the Taunton River.  The project reach is completely within tidal influence.  Do you have a small map of the project area that's faxable?
2)  Question also came up about the basis for OEPC/Willie Taylor's letter of July 2005 which Willie will have to answer.  I assume we provided input into that letter -- anything you could send me about what we provided last year would be helpful.  As I understand it there was an ER for this project which at the time OEPC delegated Department authority to respond to the Service since it was a FERC matter.  That was July 2005.  Subsequently, the Corps got involved with the 404 permit and we, the FWS, seemed to have retained authority to respond for both NPS and ourselves.   That was February 2006.   This is when the WSRA was invoked.  The Corps is unable to permit a project if the NPS declares affects under WSRA.  Our (DOI) position was effectively a project stopper.

Bottom line -- this is so typical of Washington -- is that we're going to have another, larger meeting, tomorrow if they can get with NPS and Willie Taylor lined up.
Thus anything you can provide regarding questions 1 & 2 above by 1st thing tomorrow morning would be much appreciated.

Marshall P Jones, Deputy Director
U.S. Fish and Wildlife Service
1849 C Street, NW
Washington, DC  20240
Tel: 202-208-4545   Fax: 202-208-6965


Rick O
Bennett/R5/FWS/DO
I                                                                   To
                                    Marshall Jones/ARL/R9/FWS/DOI@FWS
                                                                    cc
11/21/2006 01:46                    Marvin Moriarty/R5/FWS/DOI@FWS,
PM                                  Michael Thabault/R5/FWS/DOI@FWS
                                                               Subject
                                    Fw: Weavers Cove

-- 002356

Marshall,

Below is Mike's latest update on activities associated with the Weaver's
Cove project.  The FWS has been trying for months to ascertain what
standard to use to advise the NPS on effect thresholds under the Wild and
Scenic Rivers Act.  Originally the NPS position was no adverse effect (up
until approx. August 06).  Based on conversations with the Regional
Solicitor's office there appeared to be some flexability to allow for
adverse effects if mitgation fully offset those effects.  As such, we
approached Weaver's Cove with some mitigation concepts which the company
more fully developed.  We have been using these concepts as the basis for
on going conversations with the Company, however, there continues to be
lack of agreement concerning the legal standard for effect thresholds under
the Wild and Scenic Rivers Act.  This has made it difficult for us to reach
resolution on this project.

Even if we get resolution on the threshold question,  FWS biologists and
NPS are concerned with accepting a financial mitigation package without
knowing more precisely the nature of effects on specific fishery resources.
Therefore, significant discussion is occurring relative to the amount of
biological monitoring that is required in order to direct the financial
resources appropriately.  Because we asked the company for a mitigation
concepts for which they developed a mitigation package further complicates
the matter.

Let me know if you need additional info  ... and I'm sure you will make me
aware of the outcomes of your meeting.

Rick
----- Forwarded by Rick O Bennett/R5/FWS/DOI on 11/21/2006 01:22 PM -----

                Michael
                Thabault/R5/FWS/D
                OI                                                      To
                                      Rick O Bennett/R5/FWS/DOI@FWS
                11/21/2006 01:19    ·                                   cc
                PM
                                                                   Subject
                                      Weavers Cove

Rick,

Per our conversation here is an update from the last one.  We have been in
constant conversation with Weavers Cove concerning their project.  We had a
meeting in early November where we (NPS and Service) went over the
companies reaction to the issues.  At that time we concluded by requesting

-- 002357

some time to reconvene with some of our other agency counter parts,
specifically NOAA.  This occurred on November 16, last week.  At the
conclusion of the meeting there appeared to be consensus around many of the
concepts we had been discussing with the company.  The big outlier is the
amount or extent of biological monitoring.  The company has agreed to the
following, certain staging options for when to use certain equipment at the
upper end of the project reach where the river constricts and there is a
higher probability of fish interaction and indirect effects, they have
agreed to a physical monitoring plan to assist in validating their dredge
model results, they have agreed to a financial package to assist in
improving biological resources on the Taunton River, and they have agree to
some biological monitoring that has been yet unspecified.  The difficulty
in the financial package, from NPS perspective as well as Service staff, is
that it is difficult to know where to direct the money without more
complete information concerning the nature and extent of the affects.
Hence the reason there is substantial debate surrounding the biological
monitoring program and how extensive or not it should be.  Additionally, it
came out in our DOI only call (Nov. 17) that there is still some debate
about what the Wild and Scenic Rivers effects threshold is.  Are we trying
to obtain no adverse effect, maintain the river in current or better
condition using mitigation, no diminishment in the resource for which the
designation occurred.  Bob McIntosh, my counterpart with the NPS was going
to the WO sol's office for a better read on the threshold question.  We
(NPS and Service) are taking the document that Weavers Cove presented to us
and we are modifying it in a way that would reflect permit conditions for
the Corps.  The plan is to convene their science folks with our USGS/NPS
science folks to discuss the purpose and amount of biological monitoring.
The NPS is leaning towards more monitoring and less mitigation/compensation
until the nature of the effects, if any, are more completely understood.

Michael G. Thabault
U.S. Fish and Wildlife Service
413-253-8304
michael_thabault@fws.gov



taunton_basemap_8_11.pdf



002358

# EXHIBIT

# B

-- 001399

| Charles Roman | To: Jamie Fosburgh/Boston/NPS@NPS |
|---|---|
| 06/05/2006 09:21 AM | cc: |
| | Subject: Re: Anadromous Fish Protection Issue 📄 |

Jamie -- I think this is a fine introductory letter.

Charley

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CHARLES T. ROMAN
National Park Service
University of Rhode Island Bay Campus
South Ferry Rd.
Narragansett, RI 02882
401-874-6886
401-874-6887 (fax)
charles_roman@nps.gov

Jamie Fosburgh

| Jamie Fosburgh | To: ben_letcher@usgs.gov |
|---|---|
| 06/02/2006 04:29 PM | cc: Charles Roman/Boston/NPS@NPS |
| EDT | Subject: Anadromous Fish Protection Issue |

Ben-

Charley Roman recommended that I be intouch with you on an anadromous fish protection issue that NPS could use expert assistance on. The issue revolves around the Weaver's Cove LNG facility proposed for Fall R. (MA) on the Taunton River.

NPS is involved in a congressionally authorized Wild and Scenic River Study of the Taunton which requires NPS to comment on any federally assisted water resource development projects that could affect the study segment. Essentially we have a veto over federal approval if we feel that the values for which the river might be designated by Congress as W&S could be adversely affected. In the case of the Taunton and Weaver's Cove, the value that we have been/are concerned with is anadromous fish (largest and most diverse anadromous fish runs in the state).

To date (through scoping, FERC DEIS and FEIS and Corps Permitting), DOI has commented (for USFWS and NPS) in a consolidated fashion, maintaining concerns of potential adverse impacts from the project on anadromous fish (due to @ 3million cu yds of dredging necessary for the ships to reach the terminal site, as well as concern over operational and site impacts). Basically, NPS has followed the lead of USFWS, National Marine Fisheries Service, MA Division of Marine Fisheries and USEPA, who have all maintained objections.

Now, NPS is being asked to "find its own experts" to look at the situation and the NPS position (rather than rely on the other agencies). This advice is coming from the solicitor's office (fearing we may get a court challenge) and from higher ups in USFWS.

So, the question is, would you be willing to take a look at the project (FEIS), DOI and other agency position papers, and advise NPS on the validity of our position/concerns for the migratory fish of the Taunton??

Charles and I thought a call to discuss this might be in order (after a brief email to get you thinking about it......).

-- 001400

If you have availability for a call next week, could you propose some dates/times?

Charles, any thoughts/additions?

Jamie Fosburgh
Rivers Program Manager, NER-Boston
(617) 223-5191

# EXHIBIT

# C

**Briefing Statement**

| | |
|---|---|
| **Bureau:** | **National Park Service** |
| **Issue:** | **NPS Review Required--Taunton WSR Study/Weaver's Cove LNG** |
| **Park Site:** | |
| **Date:** | **7/18/05** |

**Background:**

Study In 2000, NPS initiated a legislatively authorized Wild and Scenic River Study of the upper Taunton River in southeastern Massachusetts for potential addition to the National Wild and Scenic Rivers System. The Study was administratively extended to the entire Taunton River in 2002 based on letters from Representatives Frank, McGovern and Lynch and support letters from all affected communities. As of July 11, 2005 all ten communities abutting the 40-mile mainstem Taunton have voted (Town Meeting/City Council) to support the Taunton River Stewardship Plan and federal designation.

LNG The Federal Energy Regulatory Commission (FERC) has given preliminary approval through a Final EIS to the Weaver's Cove LNG facility planned for Fall River, MA on the lower Taunton River. The approval came despite intense political opposition from the MA congressional delegation, both houses of the state legislature, Governor Romney (who made a publicized trip to the White House to oppose the facility and federal energy legislation giving FERC final say on LNG citing), and all local communities. The approval also failed to adequately address many key environmental concerns raised by state and federal agencies on the DEIS. Of particular concern are fisheries issues, as the Taunton hosts the state's largest anadromous fish runs and its estuary supports endangered Winter Flounder spawning and juvenile development habitat.

FERC's FEIS (May 2005) correctly cites that federal Army Corps of Engineers dredge and fill permits necessary for the project (2.5million cubic yards of dredge, 11acres of permanent intertidal/subtidal habitat loss) cannot be issued without concurrence from NPS that the project will not adversely affect potential designation of the Taunton as a Wild and Scenic River (per Section 7 of the Wild and Scenic Rivers Act).

**Current Status:** DOI commented on the FEIS through DOI (July 5, signed by Willie Taylor, Director OEPC) that critical fisheries resource protections recommended by state and federal fisheries agencies were not adopted by FERC, and therefore NPS considered that the project, as currently defined would not be compatible with W&SR designation and resource protection. Further, DOI noted that FERC identified substantial unavoidable site impacts to the Lower Taunton in the vicinity of Fall River for which mitigation would be necessary (the applicant has proposed a $1 million mitigation fund). NPS' legislative mandate under the W&SR Act prohibits NPS from approving a federal water resource development project that would have such an adverse impact (mitigation is not contemplated in the W&SRA). Therefore NPS finds it unlikely that the project as proposed can be made compatible with WSR designation.

On July 18, Representative Barney Frank, with the support of the State and ten abutting communities, introduced legislation to designate the entire Taunton River as a component of the Wild and Scenic Rivers System (HR 3321). NPS' Draft Study Report is under preparation and should be released in the Fall of 2005.

Attachments:

DOI comments on LNG Draft and Final EIS
National Marine Fisheries Service Comments on FEIS
HR 3321

---

**CONTACT: Jamie Fosburgh, Program Manager, National Rivers North (617) 223-5191**