IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WEAVER'S COVE ENERGY, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case: 1:07-cv-01525 (RBW) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| DEPARTMENT OF THE INTERIOR; | ) | |
| UNITED STATES FISH AND WILDLIFE | ) | |
| SERVICE; | ) | |
| UNITED STATES NATIONAL PARK | ) | |
| SERVICE, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO
<u>STATE A CLAIM AND LACK OF JURISDICTION</u>**

## TABLE OF CONTENTS

PAGE

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   PLAINTIFF HAS NOT STATED A JUSTICIABLE CLAIM
          FOR RELIEF UNDER EITHER THE WSRA OR THE APA . . . . . . . . . . . . . . 5

          1.   Plaintiff Cannot Raise a Cognizable WSRA Claim . . . . . . . . . . . . . . . . 5

          2.   Plaintiff Cannot Raise a Cognizable APA Claim . . . . . . . . . . . . . . . . . 12

               a.   The Challenged Letters Denote WSRA
                    Analysis that Interior Had Not Yet
                    Completed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

               b.   The 2005 and 2006 Letters By Themselves
                    Did Not Have Binding Legal Effects . . . . . . . . . . . . . . . . . . . . . 17

     B.   EVEN IF PLAINTIFF HAD DESCRIBED A COGNIZABLE
          WSRA OR APA CLAIM, IT LACKS STANDING TO RAISE IT . . . . . . . . . 18

     C.   THIS COURT ALSO LACKS JURISDICTION BECAUSE
          PLAINTIFF'S CLAIMS ARE NOT RIPE UNDER THE
          CONSTITUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

          1.   Deferring Judicial Review Now Would Not Harm
               Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

          2.   Plaintiff's Cause of Action is Not Fit For Judicial Decision . . . . . . . . 23

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

FEDERAL CASES                                                                    PAGE

Aid Association for Lutherans v. USPS, 321 F.3d 1166 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . 12

Amgen v. Smith, 357 F.3d 103 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Bennett v. Spear, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,17,20,22

Center for Automobile Safety v. National Highway Traffic Safety Administration,
452 F.3d 798 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

City of Fall River v. FERC, 507 F.3d 1 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Clarke v. Sec. Industrial Association, 479 U.S. 388 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Clean Air Implementation Project v. EPA, 150 F.3d 1200 (C.A. D.C. 1998) . . . . . . . . . . . . . 24

Cronin v. Federal Aviation Admin., 73 F.3d 1126 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 24

Dart v. United States, 848 F.2d 217 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Florida Power & Light Co. v. EPA, 145  F.3d 1414 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . 24

Fraternal Order of Police v. Williams, 375 F.3d 1141 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . 9

Independent Petro. Associate of America v. Babbitt, 235 F.3d 588 (D.C.
Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,20

Metropolitan Washington Airports Authority v. Citizens for Abatement of
Aircraft Noise, 501 U.S. 252 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Munsell v. Department of Agriculture, 509 F.3d 572 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . 9

National Association of Home Builders v. U.S. Army Corps of Engineers, 417 F.3d 1284 (C.A.
D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

National Parks and Conservation Association v. Manson, 414 F.3d 1 (D.C.
Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

FEDERAL CASES                                                    PAGE

Ohio Forestry Association, Inc. v. Sierra Club, 523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . 23,24

Pennsylvania Municipal Authorities Association v. Horinko, 292 F. Supp. 2d
95 (D.D.C.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission,
324 F.3d 726 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,17,18

Roaster-Clark Agribusiness, Inc. v. Johnson, 391 F. Supp. 2d 21 (D.D.C.
2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Trudeau v. Federal Trade Commission, 456 F.3d 178 (D.C. Cir. 2006) . . . . . . . . . . . . . . . 11,12

Valley Forge Christian College v. Americans United for Separation of
Church and State, Inc., 454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,22

Warth v. Seldin, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

Whitman v. American Trucking Association, 531 U.S. 457 (2001) . . . . . . . . . . . . . . . . . . 13,17

Wyoming Outdoor Council v. U.S. Forest Service, 165 F.3d 43 (D.C. Cir.
1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

FEDERAL STATUTES                                                PAGE

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,18

16 U.S.C. § 1278(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6,7,8,9,11,17,20,24

MISCELLANEOUS

Rules 12(b)(1) Fed. R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rules 6 Fed.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WEAVER'S COVE ENERGY, LLC, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case: 1:07-cv-01525 (RBW) |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| DEPARTMENT OF THE INTERIOR; | ) |
| UNITED STATES FISH AND WILDLIFE | ) |
| SERVICE; | ) |
| UNITED STATES NATIONAL PARK | ) |
| SERVICE, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM AND LACK OF JURISDICTION**

## I. INTRODUCTION

Plaintiff's theory that its Wild and Scenic Rivers Act ("WSRA") and Administrative Procedure Act ("APA") claims are justiciable now depends on two alleged facts that, in the exchange of both plaintiff's pleaded allegations and the parties' respective exhibits, have been demonstrably controverted.

First, repeatedly quoting the same sentence fragment from federal defendants' ("Interior's ") challenged 2005 letter ("2005 letter"), plaintiff posits that the 2005 letter and a subsequent Interior letter also challenged here ("2006 letter") are the "statutorily required" WSRA determinations to which Congress referred in enacting that statute. See

Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction ("Pl. Opp.") at 22, 39-41; 16 U.S.C. § 1278(b)(where prospective federal regulatory proceedings would "assist" a given water resources project, WSRA requires Interior to make a decision that this project either would or would not "have a direct and adverse effect on the values for which [a WSRA] river might be designated").

However, when this Court reads the language surrounding the sentence fragment on which plaintiff relies, it will recognize that Interior's 2005 and 2006 letters did not transmit the WSRA decisions to which this statute refers.  Instead, Interior (1) referred to a future WSRA determination that it had not yet made; (2) stated that this future WSRA decision would be contingent on both discussions with other "permitting agencies" and future "fishery resource protection" that had not been completed or submitted and (3) also stated not only that Interior's initial WSRA analysis was limited to the particular marine terminal and dredging project ("LNG dredging project") "currently proposed," but also that this analysis may or "**may not**" ripen into a completed WSRA decision, depending on whether Congress would make "a final determination on whether to designate some, all, or none of the Taunton River" under the WSRA.  Defendants' Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction and Supporting Memorandum of Law ("Def. Mot."), Exh. A, Attachments 1 at 3-4 and 4 at 4 (emphasis supplied).

Second, plaintiff insists that it did not change the particular LNG dredging project on which the 2005 and 2006 letters are specifically premised.  Pl. Opp. at 7-8, 14-15.  However, in its papers, plaintiff (1) admits that it submitted new fishery resources

2

mitigation after the 2005 and 2006 letters requested additional and "satisfactory" fishery protection; (2) admits or does not dispute that it changed both the size and frequency of its proposed LNG vessels after Interior wrote the 2005 and 2006 letters; (3) also does not dispute that, on the basis of this new change, the U.S. Coast Guard now opposes the LNG project on public safety grounds; and (4) does not controvert Interior's evidence, that on the basis of the Coast Guard's intervening safety decision, the U.S. Army Corps of Engineers ("COE"), Massachusetts, Rhode Island, and the Federal Energy Regulatory Commission ("FERC") have now either refused to authorize or withdrawn the regulatory authorization necessary for plaintiff to begin any LNG dredging.[1]

Thus, on the basis of project changes proposed by plaintiff, independent federal and state agencies indisputably blocked all of the LNG dredging that Interior analyzed in the 2005 and 2006 letters, after Interior wrote those letters.  Therefore, Interior's demonstration that plaintiff's LNG dredging project materially changed after Interior

---

[1] See Pl. Opp. at 13, 13 n.12 (plaintiff proposes new fishery mitigation as of "May 3, 2007"); Pl. Opp., Declaration of George Gehrig at ¶¶ 21-23 (plaintiff submits new fishery mitigation between 8 June 2006 and 15 December 2006, after Interior identifies additional mitigation issues in 2005 and 2006 letters) and ¶ 35 (plaintiff admits it proposed new LNG vessels) ; Compare Def. Exh. A at ¶¶ 14, 17 and Attachment 12 at 5 (Coast Guard declines to authorize LNG project because of new vessels); Def. Exh. A at ¶ 16 and Attachment 11 (because of Coast Guard decision, COE refuses to issue permits necessary for plaintiff to begin LNG dredging); Exh. A at ¶ 15 and Attachments 9 at 2-3, 10 at 3-4, and 11 (because of Coast Guard decision, Rhode Island and Massachusetts decline to issue permits necessary for plaintiff to begin LNG dredging); Exh. A, Attachment 3 at 15-16, 38-39 (23 January 2006 FERC supplemental order)(FERC certificate for LNG dredging project contingent on U.S. Coast Guard approval of LNG project, among other projects) with Pl. Opp. at 6-8, 7 n.4, 14-15 (plaintiff does not controvert documentation that COE, Massachusetts, Rhode Island, and FERC have, on non-WSRA grounds, decided to either not authorize or withdraw their conditional approval of the LNG dredging project).

wrote the 2005 and 2006 letters was and is meticulously accurate.  Id.

This Court consequently must dismiss plaintiff's complaint on at least four independent grounds. First, plaintiff has not raised a cognizable WSRA claim because, even if its pleaded allegations were true, (1) the 2005 and 2006 letters that plaintiff specifically incorporates into those allegations are not decisions under the WSRA and (2) these letters therefore did not and could not violate that statute.

Second, plaintiff has not raised a cognizable APA claim because it challenges preliminary, highly contingent analysis in the challenged letters that did not have binding legal consequences under the WSRA.  Therefore, these letters cannot be  "final agency action" under the APA.  Third, plaintiff lacks standing because it has not shown a legal wrong under the WSRA, it has not shown that the 2005 and 2006 letters caused COE or FERC to harm plaintiff, nor has it shown that plaintiff is within the class that Congress intended to enforce the WSRA.

Fourth, plaintiff's claims are not ripe under the Constitution because the COE, Massachusetts, Rhode Island, and FERC have each blocked the dredging desired by plaintiff, on safety grounds unrelated to the WSRA. Therefore, deferring judicial review of plaintiff's WSRA claims would not harm plaintiff at all because Interior has attested it would issue a "final WSRA analysis" if the non-WSRA issues that have blocked the LNG dredging project are ever resolved in plaintiff's favor.  Def. Mot., Exh. A at ¶¶ 12, 18.

4

## II.  ARGUMENT

### A.  PLAINTIFF HAS NOT STATED A JUSTICIABLE CLAIM FOR RELIEF UNDER EITHER THE WSRA OR THE APA

In its Complaint for Judgment and Relief Pursuant to the Declaratory Judgment Act and the Administrative Procedure Act ("Complaint"), plaintiff raises four claims alleging violations of two statutes: the WSRA and the APA.  If plaintiff has not pleaded, cannot plead, or cannot make a case under the WSRA or APA, then this Court must dismiss its complaint.  In the exchange of pleadings, briefs, and exhibits, plaintiff demonstrates it cannot raise a prima facie WSRA or APA claim.  Therefore, this Court should dismiss the complaint.

### 1.  Plaintiff Cannot Raise a Cognizable WSRA Claim.

Plaintiff raises two types of WSRA claims.  First, in Count I, plaintiff pleads that the LNG dredging project is not a "water resources project" under the WSRA and that, therefore, Interior "lacks authority" under the statute.  Complaint, ¶¶ 67-76; Pl. Opp. at 3, 16.  The WSRA provision to which plaintiff refers provides that:

> [N]o department or agency of the United States shall assist by loan, grant, license, or otherwise in the construction of any **water resources project** that would have a direct and adverse effect on the values for which such river might be designated, as determined by the Secretary responsible for its study or approval.

16 U.S.C. § 1278(b) (emphasis added).

Under these plain words, unless the relevant project is a "water resources project,"

the statute does not confer any duty on Interior to issue or not issue a decision that a given project would "have a direct and adverse effect on the values for which a [WSRA] river was established."    Id.    In response to these statutory words, plaintiff announces that, because the LNG dredging project is not a water resource project under the WSRA, the WSRA actually prohibits Interior from taking "**any** action with respect to the [LNG dredging] project."  Pl. Opp. at 3, 16 (emphasis in original).  However, plaintiff never identifies a WSRA provision, any other federal law, or case authority that prohibits Interior from analyzing, commenting on, or writing a letter about a dredging project that is not a WSRA "water resources project."  16 U.S.C. § 1278(b).

In response, plaintiff points out that, because Interior analyzed a project in the 2005 and 2006 letters that Count I alleges was not a "water resources project" under the WSRA, this claim in effect also alleges those letters were "ultra vires" decisions because they exceeded Interior's WSRA authority.  Pl. Opp. at 3-4.  Similarly, plaintiff claims in Count II that its LNG dredging project would affect parts of the watershed that are outside of the properly designated WSRA system.  Id.; Complaint at ¶¶ 77-88.[7]  Thus, just as in Count I, plaintiff alleges in Count II that the 2005 and 2006 letters were "ultra vires" WSRA determinations because, under plaintiff's theory of the case, they exceeded the

---

[7] Decisions by Interior under the WSRA that a given project would or would not "have a direct and adverse effect on [WSRA] values" must govern "any river which is listed in section 1276(a) of this title." 16 U.S.C. § 1278(b).

WSRA's statutory mandates.[3/]  Pl. Opp. at 26-29.

In contrast, in both Count III and Count IV, plaintiff assumes Interior acted within its WSRA jurisdiction but alleges that its WSRA decisions were incorrect.  Plaintiff claims the 2005 and 2006 letters violated the WSRA and the APA because they were (1) WSRA determinations that the LNG dredging project would "have a direct and adverse effect on [WSRA values]" and (2) also supported with evidence and analysis that was either "arbitrary and capricious" or not "substantial."  Complaint at ¶¶ 89-94 (Count III)

---

[3/] No party disputes that the Upper Taunton River was designated as a Study River by an Act of Congress on October 19, 2000. 16 U.S.C. § 1276(a)(137). Under Section 7(b)(ii) of the WSRA, Study Rivers are subject to the requirements in Section 7, which apply for interim periods described in three paragraphs. 16 U.S.C. § 1278(b)(I), (ii) & (iii). Plaintiff's claim that the LNG dredging project was not in a properly designated WSRA area rests on Section 5(b)(17), 16 U.S.C. § 1276(b)(17), which requires the Secretary of the Interior to complete its study of the Upper Taunton River and submit a related report to Congress by October 19, 2003. Plaintiff apparently claims that this time line is only relevant to the deadline specified in Section 7(b)(I) and that, therefore, the statutory period of protection would expire on 30 September 2004. See Pl. Opp. at 10.

Plaintiff is mistaken because Sections 7(b)(I) and 7(b)(ii) are plainly linked by the conjunction "and," not "or." Thus, the plain words of Section 7(b)(ii) extend the statutory protections "during such interim period from the date a report is due to Congress and the time a report is actually submitted to the Congress." 16 U.S.C. § 1276(b)(ii). Therefore, because Interior has not yet submitted a final report to the President or Congress, the protections of Section 7(b) continue to apply to the Upper Taunton River until that report is submitted.

Plaintiff also asserts that, because Congress did not designate the Lower Taunton River as a Study River, the agency's decision to administratively extend the study area cannot expand Interior's authority under the WSRA. Pl. Opp at 11. Again, plaintiff is wrong. The Department's position that Section 7(b) of the WSRA would apply to the LNG dredging project **does not** rest on the fact that Interior administratively expanded the study area.  Instead, because plaintiff's project is located below a congressionally-designated Study River (the Upper Taunton River), it either may or may not "diminish the scenic or recreational, and fish and wildlife values present in the potential wild, scenic or recreational river area on the date of designation of a river for study as provided for in section 1276 of this title." 16 U.S.C. § 1278(b).  As show below, infra at 8-12, Interior has not yet made a WSRA decision as to whether the project will actually diminish fish and wildlife values.  See Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel, 437 F.3d 1256, 1264 (D.C. Cir. 2006).

and 95-99 (Count IV); see also 16 U.S.C. § 1278(a).

Therefore, to make a prima facie case that the challenged letters were either "ultra vires" WSRA decisions (Counts I and II) or inaccurate and unsupported under that statute (Counts III and IV), plaintiff must identify and then challenge an actual WSRA decision, "as determined by the Secretary" (Interior), that the LNG dredging project "**would have** a direct and adverse effect on [WSRA values]."   16 U.S.C. § 1278(b)(emphasis supplied).

Plaintiff cannot make a prima facie WSRA case under this language because it cannot show that Interior ever made the particular WSRA decision to which the WSRA refers.  In its complaint, plaintiff specifically incorporates the 2005 and 2006 letters in its allegations.  Complaint at ¶¶ 45 (incorporating 2005 letter) and 56 (incorporating 2006 letter).  The 2004 and 2005 letters never state the LNG project either would or would not "have a direct and adverse effect on [WSRA values]." 16 U.S.C. § 1278(a).  Def. Exh. A, Attachment 1 at 3-4 and Attachment 4.  Attempting to obscure this fact with incomplete parsing, plaintiff repeatedly quotes a sentence fragment from the 2005 letter, in which Interior refers to a "statutorily required affirmative statement of no adverse impact" under the WSRA.  Pl. Opp. at 39-41. However, the sentence including this fragment refers to a possible WSRA determination that Interior had not yet made by stating that this future decision would be contingent on a future demonstration of either "satisfactory fishery resource protection" or the lack thereof.  Def. Exh. A, Attachment 1 at 3.

Further, the WSRA does not require Interior to make a decision unless there is a viable regulatory process by which a federal agency would "assist by loan, grant, license,

or otherwise" a project having "a direct and adverse effect on [WSRA values]."   16 U.S.C. § 1278(b).  Thus, Interior states in the 2005 letter that its future decision would be contingent on ongoing and future consultation with independent "permitting agencies" and "appropriate fishery resource experts" about fishery protection that they would or might deem necessary.  Def. Exh. A, Attachment 1 at 3.  Similarly, the 2006 letter is also contingent on both Interior's and the U.S. Army Corps of Engineer's decisions about future "upstream and downstream" fishery mitigation.  Id., Attachment 4 at 1-2, 4.

Finally, as mentioned above, the WSRA provides that Interior's WSRA determination must address a river "listed in section 1276(a) of this title."  16 U.S.C. § 1278(b).  Therefore, Interior also stated that any future WSRA decision also would be contingent on future action by Congress and that, therefore, Interior may or "may not" make a future WSRA decision, depending on whether Congress would make "a final determination on whether to designate some, all, or none of the Taunton River" under the WSRA.  Def. Exh. A, Attachment 1 at 4.

On the face of the 2005 and 2006 letters, then, this Court should dismiss all of plaintiff's WSRA claims because the challenged comment letters are not WSRA decisions, as defined in the WSRA.  At best, the letters transmit preliminary analysis that refers to a possible WSRA decision by Interior in the future.

Unable to adduce a completed WSRA decision in its own declaration or attached exhibits, plaintiff directs this Court to not consider Interior's declarations and other evidence.  Pl. Opp. at 36 (asserting Rule 12(b)(6) precludes "Defendants from basing

their argument on matters outside the Complaint").  However, where, as here, each party had a reasonable opportunity to present extra-complaint evidence, Rule 12(b)(6) provides that a motion to dismiss "shall be treated as one for summary judgment" if "matters outside the pleading are presented to and not excluded by the Court."  Thus, this Court may also characterize a Rule 12(b)(6) motion granted by it "as a grant of summary judgment" as well.  Munsell v. Dep't of Agriculture, 509 F.3d 572, 592-593 (D.C. Cir. 2007); Fraternal Order of Police v. Williams, 375 F.3d 1141, 1143-1144 (D.C. Cir. 2004).

As mentioned above, the WSRA does not require Interior to make a WSRA decision unless a federal agency's regulatory decision would "assist" a project having "a direct and adverse effect on [WSRA values]."  16 U.S.C. § 1278(b).  Here, plaintiff does not dispute that two federal agencies  had authority to decide to either assist or not assist the LNG dredging project under their regulatory jurisdiction: the U.S. Army Corps of Engineers ("COE") and the Federal Energy Regulatory Commission ("FERC").

Notably, plaintiff has not controverted Interior's evidence that, because of the Coast Guard's decision to block the LNG dredging project on public and navigation safety grounds unrelated to the WSRA claims raised here,[4] (1) the COE has decided it will not issue its dredging permits to plaintiff[5] unless the Coast Guard reverses its

---

[4] Plaintiff is now "administratively appeal[ing]" the Coast Guard's decision.  Pl. Opp. at 14.

[5] Plaintiff also does not dispute that Rhode Island and Massachusetts have blocked all LNG dredging by either denying or withdrawing their Section 401 water quality certifications under the Clean Water Act.  Instead, plaintiff admits it is appealing those State decisions in the District of Columbia Circuit now.  Pl. Opp. at 15; see also Def. Mot. at 11-12.

decision and (2) FERC's contingent certificate no longer authorizes the LNG dredging project. Compare Def. Mot. at 10, 11-14 (summarizing evidence documenting FERC certificate contingent on Coast Guard's approval of plaintiff's water suitability assessment and on both COE and State approval of dredging), 11 (summarizing evidence documenting Coast Guard's rejection of LNG water suitability assessment on non-WSRA grounds), and 11-12 (documenting COE's, Massachusetts' and Rhode Island's decisions to not grant dredging permit unless Coast Guard reverses its navigation safety decision) with Pl. Opp. at 6-8, 14-15 (plaintiff does not controvert Interior's evidence documenting withdrawal of COE and FERC approval).

On the basis of this uncontroverted evidence, the Court should conclude that all relevant federal agencies have, on grounds independent of plaintiff's WSRA claims, either refused to issue a dredging permit for or withdrawn their contingent approval of the LNG dredging project. Thus, this Court must dismiss all of plaintiff's WSRA claims on an additional ground: because there is no ongoing federal activity that would "assist" the LNG dredging project in the immediate future, the WSRA does not require Interior to make a WSRA decision now. 16 U.S.C. § 1278(b). Therefore, Interior's suspension of any future WSRA decision about the LNG dredging project until the Coast Guard resolves pending navigation safety issues was highly consistent with the WSRA. Id.; Def. Exh. A at ¶¶ 12, 18 (Interior describes suspension of its WSRA analysis of the LNG dredging project).

In sum, on two grounds, plaintiffs cannot raise a cognizable WSRA claim: all of its

11

claims presuppose (1) an alleged WSRA decision that, on the contrary, Interior never made and (2) alleged federal regulatory proceedings to "assist" the LNG dredging project that in fact are not viable, for reasons unrelated to the WSRA. 16 U.S.C. § 1278(b).

### 2. **Plaintiff Cannot Raise a Cognizable APA Claim**.

Plaintiff rests the bulk of its APA defenses on an assertion that it need not comply with the APA because plaintiff seeks "declaratory and injunctive relief against **ultra vires** action" (emphasis in original). Pl. Opp. at 26-29. However, this assertion ignores plaintiff's own allegations. See Complaint at ¶ 13 (plaintiff cites APA, "5 U.S.C. §§ 701-706," as its ground for "JURISDICTION").

Plaintiff's "ultra vires" argument is also belied unambiguously by the language of the cases cited ostensibly to support it. See Pl. Opp. at 27-29, 34-35, citing Trudeau v. Federal Trade Comm'n, 456 F.3d. 178, 189-190 (D.C. Cir. 2006)("Trudeau"); Aid Ass'n for Lutherans v. USPS, 321 F.3d 1166, 1172-1173 (D.C. Cir. 2003)("USPS"); Dart v. United States, 848 F.2d 217, 222 (D.C. Cir. 1988)("Dart"). In all of these cases, the District of Columbia Circuit either applied this "ultra vires" jurisdiction in or limited it to situations where "Congress had expressed an unqualified intent to shut off [judicial] review." Dart, 848 F.2d 217, 222; see also Trudeau, 456 F.3d. 178, 189-190 ("non-statutory" or ultra vires jurisdiction available where "plaintiff is **unable** to bring his case predicated on either a specific or a general statutory review provision"); USPS, 321 F.3d 1166, 1172-1173 ("ultra vires" jurisdiction asserted where Congress "precludes judicial review" under the APA).

Under plaintiff's cases, ultra vires jurisdiction should not be asserted here because Congress has not barred judicial review of plaintiff's WSRA claims.  Id.  Thus, plaintiff's desired "ultra vires" review is unavailable because, if Interior's WSRA analysis ever crystallizes into "final agency action" here, plaintiff may seek judicial review under the APA.  5 U.S.C. § 704.  Further, even if arguendo ultra vires review would be available, Interior has shown above that it has not made a decision under the WSRA.

### a.  The Challenged Letters Denote WSRA Analysis that Interior Had Not Yet Completed.

To be final, the challenged letters must mark the completion and "consummation of the agency's decisionmaking process–it must not be of a tentative or interlocutory nature."  Bennett v. Spear, 520 U.S. 154, 177-178 (1997)("Bennett").  As shown above, supra at 8-12, (1) both the 2005 and 2006 letters were contingent on future fishery protection and future fishery mitigation decisions of FERC, the COE, or other entities and (2) the 2005 letter was also contingent on future coordination with "permitting agencies," future consultation with "fishery resources experts," and future legislation by "Congress."  Def. Exh. A, Attachments 1 at 3-4 and 4 at 1-2, 4.

On these grounds alone, the 2005 and 2006 letters did not transmit a completed WSRA decision because Interior specifically retained expansive discretion in them to change its mind.  Whitman v. American Trucking Association, 531 U.S. 457, 478 (2001)(agency action not final unless agency "has rendered its last word on the matter");  Bennett, 520 U.S. 154, 177-178; Reliable Automatic Sprinkler Co. v. Consumer Product

Safety Commission, 324 F.3d 726, 731, 733 (D.C. Cir. 2003); Independent Petro. Assoc. of Am. v. Babbitt, 235 F.3d 588, 594 (D.C. Cir. 2001); Pennsylvania Municipal Authorities Association v. Horinko, 292 F.Supp.2d 95, 105 (D.D.C.2003).

The 2005 and 2006 letters were not final agency actions on another independent ground: although Interior specifically limited those letters to the particular project "currently proposed" on their dates, plaintiff significantly changed its project after Interior wrote the 2005 and 2006 letters. In response, plaintiff insists it did not change the LNG dredging project, presumably because plaintiff never changed the quantum of sediment it desired to remove from the Taunton River. See Pl. Opp. at 7-8, 14-15, and 32; Declaration of George Gehrig ("Gehrig. Decl.") at ¶ 34. Plaintiff's insistence is seriously mistaken because, with plain words and corresponding evidence never controverted by it, Interior documented at least two significant project changes.

First, in its declaration, Interior confirmed that, "after submitting the February 7, 2006 comment letter," plaintiff "proposed to implement additional mitigation measures as part of the Taunton River dredging project." Def. Mot., Exh. A at ¶¶ 12, 18. Second, on pages 9 to 11 of its opening brief, Interior explained its evidence that

> in early February 2006, plaintiff changed the LNG dredging project analyzed in Interior's 2005 and 2006 letters by (1) proposing to use smaller tankers or vessels with a width of less than '98-feet' that would also require 'more frequent trips to the proposed Taunton River LNG terminal' and (2) adopting some of the time of year dredging restrictions recommended in Interior's 2006 letter. Exh. A at ¶ 12 and Attachment 3 at 15-16 (23 January 2006 FERC supplemental hearing).

Def. Mot. at 9-11; see also Def. Mot., Exh. A at ¶¶ 12, 14.

14

Unable to controvert this evidence with evidence of its own, plaintiff resorts to characterizing it as "a falsehood," "categorically false," "made-up assertions," and "misrepresentations." Pl. Opp. at 7-8, 14-15, and 32. However, Interior neither stated nor implied in its papers that plaintiff had changed the amount of Taunton River sediment it either desired or desires to dredge. Instead, the parties agreed that the project's dredging would consist of between "2.5 million and 2.6 million cubic yards of sediment." Def. Mot. at 9, see also Pl. Opp. at 8 ("approximately 2.5 million cubic yards").

Further, in the parties' exchange of briefs and corresponding evidence, plaintiff either agreed or provided evidence consistent with the particular project changes documented by Interior. See Pl. Opp. at 13, 13 n.12 (plaintiff proposes new fishery mitigation as of "May 3, 2007"); Pl. Opp., Gehrig Decl. at ¶¶ 21-23 (plaintiff submits new fishery mitigation between 8 June 2006 and 15 December 2006, after Interior requests additional mitigation in 2005 and 2006 letters) and ¶ 35 (plaintiff admits it proposed a new "offshore disposal" sediment mitigation plan and "smaller tanker ships than were proposed before"). Therefore, in tendering its unsupported accusations of "made-up" federal assertions, plaintiff devotes an unusually high amount of both rhetorical energy and space to a purported quantum of dredging issue that Interior never raised.

Notably, the two project changes that followed the 2005 and 2006 letters were significant because they were coextensive with two contingencies in the challenged letters. First, as mentioned above, the challenged letters were expressly contingent on the presence or absence of adequate fishery mitigation. Def. Mot., Exh. A, Attachments 1 at

15

3 and 4 at 1-2, 4.  Therefore, by changing the proposed fishery mitigation for the LNG dredging project after Interior wrote the 2005 and 2006 comment letters, plaintiff materially changed the very project analyzed in these letters.

Second, plaintiff does not dispute that, after the Coast Guard decided the new design and new traffic density proposed for plaintiff's new LNG tankers would create an unacceptably high risk of damaging "the Brightman Street bridges" and closing "the waterway...to marine traffic," all of the agencies responsible for authorizing the LNG project (COE, Massachusetts, Rhode Island, and FERC) either denied or withdrew their authorizations of it.  Exh. A at ¶¶ 10, 12-18, Attachment 2 at 49-50, 59 Attachment 3 at 38-39 (23 January 2006 FERC supplemental order), Attachment 3 at 4 (17 April 2006 FERC supplemental order); Attachment 8 at 26 and Attachments 9 at 2-3, 10 at 3-4, and 11; Pl. Opp. at 6-8, 14-15 (plaintiff does not controvert this evidence).

On these uncontroverted grounds, it was more than reasonable for Interior to conclude that (1) the LNG project "currently proposed" at the time of the 2005 and 2006 letters had materially changed because all applicable agencies had subsequently declined to authorize the dredging project analyzed in those letters on non-WSRA grounds and (2) its future WSRA analysis of this project consequently should be suspended because, as mentioned above, the WSRA does not require a WSRA decision unless there is an ongoing regulatory process by which a federal agency would "assist" a project having "a direct and adverse effect on [WSRA] values."  16 U.S.C. § 1278(b); see also Def. Mot., Exh. A at ¶¶ 12, 18 (Interior suspends future WSRA analysis), Attachment 1 at 4 and

16

Attachment 3 at 4 (challenged letters contingent on project "currently proposed").

Therefore, the challenged letters are not completed WSRA decisions because they only commented on a project "as currently proposed" that indeed changed both subsequently and materially.  See e.g., Whitman v. American Trucking Association, 531 U.S. 457, 478; Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission, 324 F.3d 726, 731, 733.

### b.  The 2005 and 2006 Letters By Themselves Did Not Have Binding Legal Effects

Challenged federal activities are not final unless, by themselves, they are completed agency actions for which particular "rights or obligations have been determined, or from which legal consequences will flow."  Bennett, 520 U.S. at 177-178 (quotations omitted).  Under this "independent legal consequences" standard, the Court lacks "authority to review claims under the APA where an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party."  Center for Auto Safety v. National Highway Traffic Safety Administration, 452 F.3d 798, 807-808 (D.C. Cir. 2006)(quotations omitted); Reliable Automatic Sprinkler Co., 324 F.3d at 731, 733-734; Roaster-Clark Agribusiness, Inc. v. Johnson, 391 F.Supp.2d 21, 28-29 (D.D.C. 2005).

Here, plaintiff cannot meet this standard.  As shown above, supra at 8-12, the 2005 and 2006 letters did not have binding legal effects by themselves because they were not completed WSRA decisions, as defined in the WSRA.  At best, plaintiff only hints

without evidence that, because of the 2005 and 2006 letters, COE, Massachusetts, Rhode Island, and FERC either denied or withheld the LNG dredging project's regulatory approval. However, as shown above, uncontroverted facts demonstrate that these agencies denied their regulatory approvals not because of Interior's WSRA analysis, but because of the U.S. Coast Guard's public safety determinations.  Thus, lacking any known or binding legal effect, the challenged letters are not "final agency action" under the APA and therefore are not justiciable. 5 U.S.C. § 704; see also Wyoming v. Dep't of the Interior, 360 F.Supp.2d 1214, 1227 (D. Wy. 2005)(Interior letter premised on contingencies, including future discussions with other agencies, not final under APA).

### B.  EVEN IF PLAINTIFF HAD DESCRIBED A COGNIZABLE WSRA OR APA CLAIM, IT LACKS STANDING TO RAISE IT

To establish standing and therefore subject matter jurisdiction under the Constitution, plaintiff must show harm from a "legally protected interest" that is both "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)(internal quotations omitted)("Lujan").  As shown above, supra at 8-12, plaintiffs cannot show a legal wrong or "legally protected interest" because (1) the challenged letters are not WSRA decisions and (2) the WSRA has not compelled Interior to make a decision now.

Citing Metropolitan Washington Airports Authority v. Citizens for Abatement of Aircraft Noise, 501 U.S. 252,264-265 (1991)("Washington Airports"), plaintiff claims that the Supreme Court has "confirmed" standing where the challenged agency "had not

18

exercised [its] power." Pl. Opp. at 20.  However, the salient issue in Washington Airports was not whether the challenged agency had used or not used its power, as plaintiff urges, but whether (1) the challenged regulatory power was unconstitutional and (2) nullifying that power would forestall plaintiff's alleged harm by "prevent[ing] the enactment of the master plan" contributing to that claimed injury.  Id. at 263-266.

Here, in contrast, there can be (1) no WSRA violation because the challenged letters were not WSRA decisions and (2) no harm to plaintiff because the agencies to which the challenged letters were directed (FERC and COE) have either declined to authorize the LNG project on non-WSRA grounds (COE) or withheld their contingent authorization on non-WSRA grounds (FERC).  Compare Def. Opp. at 9-14  (evidence that COE, Massachusetts, Rhode Island, and FERC declined to authorize LNG project on non-WSRA grounds) with Pl. Opp. at 6-8, 13-15 (not controverting this evidence).

Further, by its plain terms, the WSRA confers mandatory duties or requirements not on plaintiff, but on FERC, Interior, and every other applicable "department or agency of the United States."  16 U.S.C. § 1278(b).  Thus, just as in Lujan, "plaintiff's asserted injury rises from the government's allegedly unlawful regulation...of **someone else**." Lujan, 504 U.S. 555, 558-559, 562 (emphasis in original)(referring to analogous Endangered Species Act requirement that federal agencies engage in agency to agency consultation and coordination to protect the environment).  Thus, because plaintiff's alleged injury requires third-party agencies to have responded to the challenged letters by harming plaintiff, establishing standing is "substantially more difficult" here because:

19

> it becomes the burden of plaintiff to adduce facts showing that [federal agencies' different] choices have been or will be made in such manner as to produce causation and permit redressability of injury.

Id. at 562.

Citing Bennett, plaintiff claims it has met this burden. Pl. Opp. at 22-24. However, Bennett is fatal to plaintiff's standing analysis. Where, as here, plaintiff alleges that harm would occur because the challenged agency action would compel or otherwise require third-party federal agencies to harm plaintiff, Bennett provides that plaintiff may establish standing by showing (1) the challenged agency action "has a powerful coercive effect" on the third party agency or (2) the third-party agency would be placed "at its own peril" if it disagreed with the challenged action. Bennett, 520 U.S. at 168-170.

Here, precisely opposite facts are present. Because the 2005 and 2006 letters were not WSRA decisions, they did not have any demonstrable effect on COE and FERC, let alone a "coercive effect." Further, Interior did not give FERC and COE the choice of either agreeing with it or being placed in regulatory "peril." Id. On the contrary, Interior specifically suspended the WSRA analysis it initiated in the 2005 and 2006 letters. Def. Mot., Exh. A at ¶¶ 12, 18. Finally, far from responding to the challenged letters by acting like third-party agencies placed in "peril" by them, FERC and COE each made decisions to either decline to approve or withdraw their conditional approval of the LNG dredging project on navigation safety grounds **unrelated** to Interior's WSRA expertise.[9]

---

[9] Compare Def. Opp. at 9-14 (summarizing evidence that FERC, COE, Rhode Island, and Massachusetts have declined to authorize LNG dredging project on non-WSRA grounds) with Pl. Opp. at 6-8, 13-15 (not controverting this evidence).

20

Therefore, unlike the parties establishing standing in plaintiff's primary standing cases, plaintiff here cannot establish constitutional standing because it cannot "show a causal link between Interior's...adverse impact letter" and the decisions of the third-party federal agencies (FERC and COE) allegedly harming plaintiff here.  Nat'l Parks and Conservation Ass'n v. Manson, 414 F.3d 1, 5-6 (D.C. Cir. 2005)("Manson"); Pl. Opp. at 20-21 (citing Manson).

Finally, plaintiff also lacks prudential standing because it has not met its burden of showing that the particular interests protected by "plaintiff's complaint...fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'"  Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474–75 (1982) (quoting Warth v. Seldin, 422 U.S. 490, 499–500 (1975)).

Citing Bennett again, plaintiff asserts that the Bennett Court authorized its invocation here of an environmental statute to satisfy its economic interests.  Pl. Opp. at 23-25.   However, the Bennett Court specifically premised its standing decision on Congress' decision to adopt a "citizen suit provision" in the relevant environmental statute.  Thus, the statute in Bennett expressly authorized "**any** person [to] commence a citizen suit." Bennett, 520 U.S. at 164-165 (emphasis supplied). Here, of course, the WSRA has no citizen suit provision.

Therefore, to meet its  burden of establishing prudential standing, plaintiff must show that it is in the particular class of plaintiffs that Congress "relied upon to challenge agency disregard of the [WSRA]."  Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399

21

(1987).  In other words, plaintiff must show that Congress intended the particular commercial class within which plaintiff claims membership to be "a reliable private attorney general to litigate the issues of the public interest" advanced by the WSRA, as opposed to those "whose suits are more likely to frustrate than to further [its] statutory objectives."  Id. at 397, 397 n.12; see also Amgen v. Smith, 357 F.3d 103, 109-110 (D.C. Cir. 2004)(no prudential standing unless plaintiff within class that "in practice can be expected to police the interests that the statute protects").

Plaintiff consequently lacks prudential standing because it admittedly does not seek to protect rivers "which, with their immediate environments, possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife . . . or other similar values" in a free-flowing condition." 16 U.S.C. § 1271.

### C.  THIS COURT ALSO LACKS JURISDICTION BECAUSE PLAINTIFF'S CLAIMS ARE NOT RIPE UNDER THE CONSTITUTION

In its opening brief, Interior rested much of its ripeness defense on the analysis of a seminal Supreme Court case, Ohio Forestry Association, Inc. v. Sierra Club, 523 U.S. 726, 732-733 (1998)("Ohio Forestry").  Plaintiff does not analyze, address, or even mention Ohio Forestry.  Pl. Opp.  To adjudicate the constitutional defense of lack of ripeness, courts  balance two jurisprudential factors, of which a "case or controversy"--or the lack thereof-- is necessarily comprised.  First, courts must assess the extent to which the  underlying dispute is inevitable and therefore palpable to ascertain "the fitness of the issues for judicial decision."  Second, courts must consider "whether delayed review would cause hardship to the plaintiffs." Ohio Forestry, 523 U.S. 726, 732-733.

### 1.  **Deferring Judicial Review Now Would Not Harm Plaintiff.**

A case is not ripe where a plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain."  Id. at 734. Here, regardless of whether this Court decides to adjudicate plaintiff's WSRA claims now, the LNG dredging project cannot proceed because, on public safety grounds unrelated to Interior's WSRA analysis, the Coast Guard, COE, Massachusetts, Rhode Island, and FERC have not authorized it.[7]  Therefore, plaintiff's claims are not ripe because deferring judicial review of them would not harm plaintiff at all, let alone "have a direct and immediate impact on [plaintiff] that rises to the level of hardship." Nat'l Ass'n of Home Builders , 417 F.3d at 1284; Clean Air Implementation Project v. EPA, 150 F.3d. 1200, 1205-1206, quoting Florida Power & Light Co. v. EPA, 145 F.3d 1414, 1421 (D.C. Cir. 1998) ("burden of participating in future [administrative or judicial] proceedings does not 'constitute sufficient hardship for the purposes of ripeness').

### 2. **Plaintiff's Cause of Action is Not Fit for Judicial Decision.**

Plaintiff trivializes the prudential, efficiency, and practicality advantages of deferring judicial review until the WSRA would require Interior to make a decision.  As mentioned above,[8] Interior properly suspended its WSRA analysis of the LNG dredging project because, unless the Coast Guard changes its navigation safety decision, there will

---

[7] Exh. A at ¶¶ 10-18, Attachment 2 at 49-50, 59, Attachment 3 at 38-39 (23 January 2006 FERC order), Attachments 3 at 4 (17 April 2006 FERC order) and 8 at 26; and Attachments 9 at 2-3, 10 at 3-4, and 11; Pl. Opp. at 6-8, 14-15 (plaintiff does not controvert this evidence).

[8] Supra at 10-12.

be no viable federal permitting process by which an agency could "assist" the LNG dredging project.  16 U.S.C. § 1278(b).

Because the WSRA consequently does not require Interior to make a WSRA decision now, plaintiff's WSRA and APA claims are not yet fit for a judicial decision. See id.  As the First Circuit recently concluded in a ripeness decision holding that the same LNG dredging project was not ripe, "we think it wiser to allow [COE, FERC, and Interior] to continue their decision-making process at least until final authorization is granted by all three agencies."  City of Fall River v. FERC, 507 F.3d 1, 7-8 (1st Cir. 2007); see also Ohio Forestry, 523 U.S. at 735; Wyoming Outdoor Council v. U.S. Forest Service, 165 F.3d 43, 48-49 (D.C. Cir. 1999)(case not fit for adjudication where plaintiff's interest in prompt adjudication is outweighed by "agency's interest in crystallizing its policy...and court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting"); Cronin v. Federal Aviation Admin., 73 F.3d 1126, 1131 (D.C. Cir. 1996)(case not fit for resolution where judicial review would "benefit from letting the question arise in some more concrete form").

## III.  CONCLUSION

Pursuant to Rules 12(b)(1) and (6), Fed. R. Civ. P., this Court should dismiss plaintiff's complaint on the justiciability and jurisdictional grounds described above.[9]

---

[9] Late in the afternoon on Friday, 14 March 2008, less than one business day before Interior's reply brief was due, plaintiff attempted to file a paper styled "Plaintiff Weaver's Cove Energy, LLC's Notice of Supplemental Support in Opposition to Defendants' Motion to Dismiss." Because the Local Rules do not appear to authorize this paper, Interior will respond in a separate pleading to plaintiff's attempted filing.

Respectfully submitted,


*/s/ Gregory Daniel Page*
GREGORY D. PAGE, DC Bar 398121
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0446
Attorneys for the Federal Defendants

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were served on  17 March 2008 by electronic filing to :

Jeffrey M. Bauer
Adam J. White
Baker Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2400

_/s/ Gregory Daniel Page_____
Gregory D. Page