IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WEAVER'S COVE ENERGY, LLC, )<br>)<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>THE UNITED STATES OF AMERICA, )<br>DEPARTMENT OF THE INTERIOR; )<br>UNITED STATES FISH AND WILDLIFE )<br>SERVICE; )<br>UNITED STATES NATIONAL PARK )<br>SERVICE, )<br>)<br>)<br>Defendants. )<br>)<br>_____) | Case: 1:07-cv-01525 (RBW) |

**DEFENDANTS' RESPONSE TO PLAINTIFF WEAVER'S COVE ENERGY, LLC'S NOTICE OF SUPPLEMENTAL SUPPORT IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Rule 7 of the Local Rules prescribes the authorized papers, times, and page limits under which a party may or may not either commence a motion or oppose one. On 22 February 2008, pursuant to Local Rule 7(b) and (e) and this Court's 14 January 2008 Minute Order ("Minute Order"), plaintiff filed a 43-page brief in opposition to Defendant's Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction ("opposition brief"). Thereafter, on 14 March 2008, plaintiff attempted to file a second paper that also opposed defendants' motion, styled "Plaintiff Weaver's Cove Energy, LLC's Notice of Supplemental

Support in Opposition to Defendant's Motion to Dismiss ("Notice"). As explained below, the Notice should be struck and, in any event, does not controvert the evidence on which defendants' motion to dismiss rests.

Plaintiff's 14 March Notice, which purports to supplement the previous opposition brief filed by plaintiff on 22 February, exceeds both the Minute Order's and Rule 7(b)'s time limits for filing opposition briefs by 21 days. Further, when added to plaintiff's 43-page opposition brief, plaintiff's four-page Notice exceeds Rule 7(e)'s 45-page limit for opposition briefs by 2 pages. See Opposition Brief (filed 22 February 2008); Pl. Notice (filed 14 March 2008). In its Notice, plaintiff does not describe a local rule, federal rule, or any other authority allowing it to file what is essentially either a second or a supplemental opposition brief, let alone file this paper at a time of plaintiff's choosing, without this Court's leave or permission. See Notice.

Lacking authority either under Rule 7 or from this Court to file its Notice, plaintiff attempts to justify this unauthorized filing by (1) complaining that the record submitted by Interior on 15 February 2008 "contains 436 documents consisting of nearly 4000 pages" and (2) also referring to unidentified documents that plaintiff obtained under a separate Freedom of Information Act ("FOIA") claim not raised in plaintiff's complaint. See Notice at 1-2, 2 n.1. However, on 15 February 2008, seven days before plaintiff filed its opposition brief, defendants ("Interior") submitted the entire record in computer disc format to plaintiff. This disc format included an index that allowed plaintiff to move quickly by hyperlink from every document described in it to the text of the corresponding document

2

itself.  See Notice of Filing Electronic Index to Federal Records Corresponding to Challenged Administrative Letters at 1-2 (filed 15 February 2008).

Given this hyperlink technology, plaintiff could have complied with Rule 7(b) and (e) by choosing one of at least two straightforward compliance alternatives.  First, plaintiff could have used the seven-day period between submission of the record and its 22 February 2008 opposition brief deadline to retrieve, by hyperlink, any document in the record to which plaintiff desired to cite.  Second, plaintiff could have asked the Court for additional time to inspect the record by moving to enlarge its 22 February briefing deadline.  However, plaintiff did not pursue either of these reasonable compliance alternatives, nor has it explained to this Court how or why a FOIA claim, FOIA documents, or FOIA issues not raised in its complaint here supposedly allow plaintiff to bypass Rule 7.  Therefore, Rule 7 authorizes this Court to both reject plaintiff's proffered Notice and also deem the particular parts of Interior's opening motion corresponding to any new issues raised in this Notice "as conceded" by plaintiff.  Rule 7(b).

Unable to show a basis in Rule 7 or elsewhere for its Notice, plaintiff nevertheless asks this Court to consider it anyway because plaintiff believes three papers attached to it "contain statements by representatives of Defendants that directly refute the position Defendants have taken in this lawsuit."  Notice at 2.  However, even if plaintiff's transparent attempt in the Notice to reargue its opposition brief justified bypassing Rule 7, which it does not, the three papers proffered by it are consistent with the particular facts on which Interior predicated its opening motion and reply brief ("Def. Reply").

One of Interior's primary factual points under the Wild and Scenic Rivers Act ("WSRA") and the Administrative Procedure Act ("APA") was that the challenged 2005 and 2006 Interior letters transmitted preliminary analysis only, not completed WSRA or APA decisions. The challenged letters were preliminary because they (1) specifically reserved Interior's discretion to change its mind by referring to several contingencies that either had not yet occurred or had not been met, including future fishery mitigation or the lack thereof, future discussions with permitting agencies, and future decisions by Congress and (2) stated that Interior's existing WSRA analysis was contingent on a "currently proposed" LNG project that plaintiff, in fact, later changed. See Def. Reply at 8-18 (filed 17 March 2008).

Plaintiff asserts that a 2006 e-mail quoting from a draft National Park Service letter supposedly refutes these facts by stating that, under the WSRA, Interior has "a veto over federal approval" of the LNG dredging project. Notice at 2, citing to "Exh. B." However, the salient issue is not whether the WSRA gives Interior a veto power, which Interior does not dispute, but whether Interior made a final decision in the challenged letters to exercise that statutory power. Plainly, plaintiff's proffered Exhibit B confirms Interior had not yet made a WSRA decision by stating that, in 2006, Interior was still "being asked to 'find its own experts' to look at the situation and the [National Park Service] position (rather than rely on the other agencies)." Notice, Exh. B at 1. Thus, by concluding with one Interior official's June 2006 request of another Interior official "to take a look at the [LNG dredging] project," the proffered e-mail is highly consistent with Interior's demonstration that the challenged letters were not completed or final WSRA decisions. Id.

Similarly, plaintiff claims the briefing statement it proffers as Exhibit C is signficant because it shows that, absent an Interior decision that the LNG dredging project "will not adversely affect" WSRA values, the U.S. Army Corps of Engineers ("COE") could not issue its required dredging permits. Notice at 2-3, citing to "Exh. C." Again, the salient issue is not whether an adverse WSRA decision by Interior would or could forestall a COE permit, which Interior does not dispute, but whether the challenged letters were final WSRA decisions, which they plainly were not. Plaintiff's proffered Exhibit C is consistent with Interior's demonstration that the 2005 and 2006 letters were not WSRA decisions because, just like those challenged letters, this new briefing paper repeatedly states that Interior's WSRA analysis was contingent on the LNG project "as proposed" and "as currently defined." Notice, Exh. C. Thus, this proposed new exhibit does not and cannot contradict Interior's evidence that the challenged letters were not final WSRA decisions because, after they were written, plaintiff materially changed the LNG project. See Def. Reply at 14-17.

Further, plaintiff claims that the Interior e-mail it proffers as Exhibit A is significant because it states that Interior's "position was a project stopper" and that the COE consequently would be "unable to permit a project **if** the NPS declares affects [sic] under the WSRA" (emphasis supplied). Notice at 2, citing Exh. A at 4 (internal number "002355"). Again, this e-mail is highly consistent with Interior's evidence that the 2005 and 2006 letters were not completed WSRA decisions because, in response to inquiries from Congress, Interior (1) also agrees, as of late 2006, that it had not reached "any particular outcome" under the WSRA; (2) states a future WSRA decision would be contingent on the presence

5

or absence of "adverse effects to the fish" that had not yet been established and, therefore, were still a major part of Interior's "debate of the day;" and (3) confirms that Interior would continue debating its WSRA analysis by scheduling "another, larger meeting tomorrow." Notice, Exh. A at 4 (internal number "002355").

Finally, plaintiff's new Exhibit A, just like its proffered Exhibits B and C, is dated well before 7 May 2007, the particular date on which the U.S. Coast Guard first determined on navigation safety grounds that it would not authorize the LNG project. Therefore, none of plaintiff's proffered exhibits can controvert Interior's evidence that, because of the Coast Guard's 2007 safety decision, COE, Massachusetts, Rhode Island, and FERC either declined to authorize or withdrew their conditional authorization of the LNG dredging project **on non-WSRA grounds**.  Def. Reply at 10-11, 16-17, 19-20, 23.

In sum, plaintiff's proffered Notice is not authorized by Rule 7 or any other authority and consequently should be struck. Further, the Notice attempts to proffer papers that, in fact, are quite consistent with the evidence on which Interior predicated its opening and reply briefs.

Respectfully submitted,

*/s/ Gregory D. Page*
GREGORY D. PAGE, DC Bar 398121
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0446
Attorney for the Federal Defendants

OF COUNSEL:
KATE COSTENBADER, ESQ.
U.S. Department of the Interior
Office of the Solicitor

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were served on 27 March 2008 by electronic filing to :

        Jeffrey M. Bauer
        Adam J. White
        Baker Botts L.L.P.
        1299 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004-2400

        */s/ Gregory D. Page*
        Gregory D. Page

Case 1:07-cv-01525-RBW    Document 22    Filed 03/27/2008    Page 9 of 9