IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WEAVER'S COVE ENERGY, LLC, )<br>)<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>THE UNITED STATES OF AMERICA, )<br>DEPARTMENT OF THE INTERIOR; )<br>UNITED STATES FISH AND WILDLIFE )<br>SERVICE; )<br>UNITED STATES NATIONAL PARK )<br>SERVICE, )<br>)<br>)<br>Defendants. )<br>)<br>_____) | Case: 1:07-cv-01525 (RBW) |

## DEFENDANTS' NOTICE OF RECENTLY ISSUED DISTRICT OF COLUMBIA CIRCUIT OPINION

In their papers, the parties do not dispute that (1) the States of Rhode Island and Massachusetts have statutory authority "to object to the [plaintiff's LNG] dredging plans," provided they comply with Section 401 of the Clean Water Act ("CWA") and (2) plaintiff recently challenged Rhode Island's and Massachusetts' CWA compliance in the "U.S. Court of Appeals for the D.C. Circuit." Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 15, 15 n. 13 (filed 22 February 2008); see also Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction at 10 n. 5 (filed 17 March 2008).

On 2 May 2008, the D.C. Circuit issued its opinion in the case to which the parties referred in their briefing. A copy is attached.

Respectfully submitted,

*/s/ Gregory D. Page*
GREGORY D. PAGE, DC Bar 398121
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0446
Attorney for the Federal Defendants

OF COUNSEL:
KATE COSTENBADER, ESQ.
U.S. Department of the Interior
Office of the Solicitor

## CERTIFICATE OF SERVICE

I certify that true and correct copies of the foregoing were served on 9 May 2008 by electronic filing to :

        Jeffrey M. Bauer
        Adam J. White
        Baker Botts L.L.P.
        1299 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004-2400

        */s/ Gregory D. Page*
        Gregory D. Page

Case 1:07-cv-01525-RBW    Document 24    Filed 05/09/2008    Page 4 of 4

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 7, 2008          Decided May 2, 2008

No. 07-1235

WEAVER'S COVE ENERGY, LLC,
PETITIONER

v.

STATE OF RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT AND W. MICHAEL SULLIVAN, DIRECTOR OF THE RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,
RESPONDENTS

STATE OF RHODE ISLAND,
INTERVENOR

---

Consolidated with 07-1238

---

On Petition for Review of the Inaction of the Rhode Island
Department of Environmental Management

---

*Bruce F. Kiely* argued the cause for petitioner. With him on the briefs were *G. Mark Cook* and *Adam J. White*.

*Carol Iancu*, Assistant Attorney General, Attorney General's Office of Commonwealth of Massachusetts, argued the cause for respondents. With her on the brief were *Martha*

2

*Coakley*, Attorney General, *Patrick C. Lynch*, Attorney General, Attorney General's Office of the State of Rhode Island, *Paul J. Roberti*, Assistant Attorney General, *Terence J. Tierney*, Special Assistant Attorney General, *Patty Allison Fairweather*, *Marisa A. Desautel*, and *Susan B. Wilson*, Attorneys, and *Alan I. Baron*.

Before: GINSBURG, HENDERSON, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Weaver's Cove Energy, LLC (WCE) applied to the Rhode Island Department of Environmental Management (RIDEM) and the Massachusetts Department of Environmental Protection (MassDEP) for "certifications" that its proposed dredge-and-fill operations would comply with the Clean Water Act. When a year had passed without the state agencies having issued final determinations one way or the other, WCE petitioned this court for review of their inaction, seeking a declaration that the States had "waived" their right to deny the requested certifications. Instead, we must dismiss the petitions for want of a case or controversy under Article III of the Constitution of the United States.

I. Background

WCE wants to build a liquefied natural gas (LNG) import terminal in Massachusetts. In order to render the facility operational, WCE will have to dredge parts of the Taunton River in Massachusetts and of Mount Hope Bay in Rhode Island. WCE needs several permits before it can proceed with the project, including, as relevant here, a dredge-and-fill permit from the Army Corps of Engineers issued pursuant to § 404 of the Clean Water Act (CWA), 33 U.S.C. § 1344. WCE's 2004 application for that permit is pending. So, too, is WCE's

3

application to the United States Coast Guard for a letter of recommendation certifying that the waterway near the terminal is suitable for LNG marine traffic. *See* 33 C.F.R. § 127.009**.**

Under § 401(a)(1) of the CWA, 33 U.S.C. § 1341(a)(1), an applicant for any federal permit that "may result in any discharge into the navigable waters" of the United States - such as a dredge-and-fill permit from the Army Corps - "shall provide the ... permitting agency a certification from the State in which the discharge originates ... that any such discharge will comply with the applicable provisions" of the Act. For the State to participate in the regulatory process, it must act expeditiously: "[I]f the State ... fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements ... shall be waived with respect to such Federal application." *Id.*

In early 2004 WCE submitted applications for § 401 certifications to the RIDEM and the MassDEP.[*] When two years had passed without the MassDEP deciding whether WCE's application was "administratively complete," 310 C.M.R. § 4.04(2)(b)(1), WCE amended its application; the MassDEP accepted the application as complete in December 2006. Meanwhile, the RIDEM had informed WCE that its

---

[*]Whether WCE needs a § 401 certification from the RIDEM in order to obtain a permit from the Army Corps is uncertain. WCE asked the RIDEM to approve its proposed dredging, but the regulations of the Army Corps provide that, unlike an application for filling, an application for dredging does not require a § 401 certification. See 33 C.F.R. §§ 323.2(d), 325.1(d). The RIDEM nonetheless maintains that WCE must obtain a § 401 certification in order to dredge, and we assume as much for the purpose of this case. WCE's application to the MassDEP concerns both dredging and filling, so it is undisputed that WCE needs a § 401 certification from the MassDEP.

4

application was incomplete eight months after its submission; WCE submitted an updated application in January 2006 and, at the RIDEM's request, continued to submit additional information until May 2007.

In June 2007, the MassDEP announced it would stay its review of WCE's application pending the Coast Guard's resolution of WCE's application. Shortly thereafter the RIDEM said it would "continue its review" of WCE's application but would "consider and review ... all applicable findings of the ... Coast Guard." WCE then filed petitions in this court for review of the state agencies' failure to act upon its applications. Later in 2007 the RIDEM preliminarily denied and the MassDEP preliminarily granted WCE's certification. Each decision is the subject of a pending appeal within the issuing state agency.

## II. Analysis

WCE filed the present petitions for review pursuant to § 19(d)(2) of the Natural Gas Act, 15 U.S.C. § 717r(d)(2), which grants this court "exclusive jurisdiction over any civil action for the review of an alleged failure to act by a ... State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit required under Federal law ... for a facility subject" to the Natural Gas Act, here the proposed LNG terminal. Although WCE petitions for review of the state agencies' failure to act, it does not ask for a remand directing the state agencies to act, *see* 15 U.S.C. § 717r(d)(3); nor would such a remand have any effect, for the state agencies have already acted. Rather, it asks this court for a declaration that each state agency, by failing to act upon WCE's application within one year of its submission, has waived its right to deny the requested certification.

The state agencies raise numerous objections to the petitions. They contend WCE lacks a cause of action; the court

5

lacks the power to grant the requested relief; the petitions are barred by equitable estoppel and by the Eleventh Amendment to the Constitution of the United States; the petitions are impermissible collateral attacks upon decisions of the Army Corps; and WCE's argument fails on the merits.

We reach none of the States' arguments, for we conclude *sua sponte* that WCE does not have standing to sue the States; the court therefore lacks jurisdiction over WCE's petitions. As the Supreme Court has explained:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations, internal quotation marks, and alterations omitted).

WCE asserts in its brief that its standing is "self-evident, because it is the applicant for a Section 401 Water Quality Certification before [the state agencies]: it is the 'object of the action (or forgone action) at issue'" [Pet. Br. at 24] (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002)). The state agencies' inaction, however, cannot support WCE's standing because WCE does not claim to have been injured by it. On the contrary, WCE's theory of the case is that it benefited from the agencies' inaction; that is, the agencies, by failing to

6

issue timely rulings on WCE's applications, waived their rights to deny the certifications WCE seeks.

By what, then, is WCE really aggrieved? We see three possibilities, but none supports WCE's standing to sue the state agencies. The first is not a legally cognizable injury; the second was not caused by the state agencies; and the third would not be redressed by the remedy WCE seeks.

The first is the denial of a § 401 certification by a state agency. At present, however, neither agency has made a final decision on WCE's application; the RIDEM issued an initial denial and the MassDEP issued an initial grant, but each decision is the subject of a pending administrative appeal.

Even a final adverse decision would not support WCE's standing, however, because WCE's claim is that the States have waived their right to deny a certification. By WCE's own lights, that is, any denial of its application for a § 401 certification would be too late in coming and therefore null and void. Logically, a petitioner cannot challenge an action as "an invasion of a legally protected interest" and simultaneously contend the action is of no legal significance. If either state agency ultimately denies WCE a § 401 certification, then WCE may argue to the Army Corps that the denial is void. If the Army Corps disagrees, then WCE may challenge its decision in court.

Second, WCE might be challenging the anticipated decision of the Army Corps to deny a dredge-and-fill permit on the ground that the Army Corps is bound by a State's refusal to issue a § 401 certification. The denial of a dredge-and-fill permit would undoubtedly be a legally cognizable injury. That injury, however, would be caused by the Army Corps, which is not a respondent here, not by the state agencies, which are the respondents. A's injuring B does not create a case or

7

controversy between B and C.  *See, e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973).

At argument counsel for WCE suggested a third possibility: The state proceedings themselves are causing WCE injury by delaying the Army Corps' consideration of its application for a dredge-and-fill permit.  According to counsel, the Army Corps refuses to consider WCE's application until the state agencies have completed their rounds**,** and a declaration by this court that the States have waived their rights under § 401 would cause the Army Corps to process its application without delay.

This suggestion is closer to the mark, for an agency's delay in processing an application may constitute a legally cognizable injury, *see, e.g.*, *Va. State Corp. Comm'n v. FERC*, 468 F.3d 845, 848-49 (D.C. Cir. 2006); *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004).  Even if the Army Corps' delay in processing WCE's § 404 application constitutes an injury, however, that injury would not be redressed by our declaring the States waived their right of approval.  The States would be without authority to issue a certification decision binding upon the Army Corps, but they would still, WCE concedes, have authority to issue a decision the Army Corps could consider.  Thus, the only effect of such a declaration would be to advise the Army Corps that it would not be bound by a State's denial of a § 401 certification.  The record indicates, however, that such a declaration would not alter the Army Corps' timetable for acting upon WCE's application for a § 404 permit.

In July 2007, the MassDEP requested and the Army Corps granted an extension to December 15 last for the State to act upon WCE's request for a § 401 certification.  The MassDEP issued its initial grant of the certification on December 14. According to the state agencies, the Army Corps' decision to grant an extension demonstrates the Army Corps has already

8

concluded the one-year clock under § 401 began to run in December 2006, and this suit is an impermissible collateral attack upon that decision. In response WCE concedes the extension was lawful but claims it was not an interpretation of § 401; rather, it demonstrated the Army Corps is willing to exercise its discretion to accept an untimely certification. *Cf. Puerto Rico Sun Oil Co. v. EPA*, 8 F.3d 73, 79-80 (1st Cir. 1993) (holding the EPA has the discretion to consider an untimely certification by a state agency).

Assuming WCE's characterization is correct – an issue we do not decide – it only goes to show WCE's claimed injury is not redressable by a court. If the Army Corps has already indicated its willingness to exercise its discretion to accept an untimely certification, then it hardly seems likely the Army Corps will pass upon WCE's permit application until the States issue their final decisions, regardless whether those decisions are binding upon the Army Corps. Our declaring that the Army Corps is not bound by the States' final decisions, that is, would not make it "likely, as opposed to merely speculative, that [WCE's] injury will be redressed," i.e., by spurring the Army Corps into action. *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

### III. Conclusion

In sum, WCE has not shown an injury caused by the state agencies that likely would be redressed by the declaration it seeks. We are therefore without jurisdiction over its petitions for review, which are, accordingly,

*Dismissed.*